COURTNEY A. ESTEP (*pro hac vice*)
cestep@ftc.gov; (202) 326-2788
SHIRA D. MODELL (*pro hac vice*)
smodell@ftc.gov; (202) 725-2162
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
Fax: (202) 326-3259

Aaron Schue (Local Counsel) (Bar No. 338760)
aschue@ftc.gov; (310) 824-4306
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Fax: (310) 824-4380
ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, Plaintiff, <br><br> v. <br><br> **REJUVICA LLC**, a California limited liability company, also d/b/a Rejuvica Health; <br><br> **KYLE ARMSTRONG**, individually and as an owner, officer, or member of Rejuvica LLC; and <br><br> **KYLE DILGER**, individually and as an owner, officer, or member of Rejuvica LLC, <br><br> Defendants. | Case No. 8:23-cv-1286 <br><br> **COMPLAINT FOR PERMANENT INJUNCTION, MONETARY RELIEF, AND OTHER RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.     The FTC brings this action under Sections 5(a)(1), 12, 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(a)(1) 52, 53(b), and 57(b), and Section 8023 of the Opioid Addiction Recovery Fraud Prevention Act of 2018 ("OARFPA"), P.L. 115-271, 15 U.S.C § 45d, to obtain permanent injunctive relief, monetary relief, and other relief for Defendants' acts or practices in violation of Sections 5(a) and 12 of the FTC Act and Section 8023 of OARFPA.  Defendants' OARFPA violations are in connection with the marketing of Sobrenix Advanced Alcohol Support ("Sobrenix").

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

3.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (d) and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces Section 12 of the FTC Act, 15 U.S.C. § 52, which prohibits false advertisements for food, drugs, devices, services, or cosmetics in or affecting commerce.  The FTC also enforces OARFPA, which prohibits unfair or deceptive acts or practices in connection with substance use disorder treatment products and services.

## DEFENDANTS

5.     Corporate Defendant Rejuvica LLC ("Rejuvica"), also d/b/a Rejuvica Health, is a California limited liability company with its principal place of business at 17791 Mitchel North, Ste C., Irvine, California 92614.  Rejuvica transacts or has

transacted business in this District and throughout the United States.  At times relevant to this Complaint, acting alone or in concert with others, Rejuvica has advertised, marketed, distributed, or sold numerous products, most of which are liquid tinctures, to consumers throughout the United States.

6.     Defendant Kyle Armstrong ("Armstrong") owns 50 percent of Rejuvica and is the company's Chief Executive Officer.  At all times material to this Complaint, acting alone or in concert with others, Defendant Armstrong has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Rejuvica, including the acts and practices set forth in this Complaint. Defendant Armstrong is actively involved in directing the company's business affairs and formulating corporate policy and strategic decisions.  He manages and is responsible for approving the company's website design and copy, managing Rejuvica's advertising staff, and approving the company's advertising copy. Defendant Armstrong resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

7.     Defendant Kyle Dilger ("Dilger") owns 50 percent of Rejuvica and is the company's Chief Operating Officer.  At all times material to this Complaint, acting alone or in concert with others, Defendant Dilger has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Rejuvica, including the acts and practices set forth in this Complaint.  Defendant Dilger is actively involved in directing the company's business affairs and formulating corporate policy and strategic decisions.  He manages and is responsible for approving advertising copy and design and manages Rejuvica's advertising, purchasing, and placement decisions.  In connection with the matters alleged herein, Defendant Dilger transacts or has transacted business in this District and throughout the United States.

**COMMERCE**

8.   At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**DEFENDANTS' BUSINESS ACTIVITIES**

9.   Defendants manufacture, label, advertise, offer for sale, and sell herbal tinctures, including products marketed to provide various health benefits.

10.   Since at least 2017, Defendants manufactured, labeled, advertised, offered for sale, and sold Sobrenix to consumers.  Defendants claimed that Sobrenix was designed to reduce or eliminate alcohol cravings and manage alcohol consumption. Defendants ceased selling the product in 2021 after the FTC notified the company it was investigating advertising claims for Sobrenix.

11.   Sobrenix contained a blend of kudzu root, milk thistle seed, angelica root, chanca piedra herb, artichoke leaf, and dandelion root, and also contained Vitamins B6 and B12, Thiamin, and Folic Acid.  The Sobrenix label advised users to "take [Sobrenix] once daily in the morning and then 30 minutes before drinking, or any time you have cravings."  Exhibit A.

12.   Defendants sold Sobrenix through their own website, Amazon.com, and Walmart, and charged $34.00 for a 2-ounce bottle of Sobrenix.

13.   Defendants advertised Sobrenix through various means, including through Internet advertising on Amazon.com, the Sobrenix website, the Rejuvica website, and a website designed to appear to be an independent review website, which was in fact owned and operated by Rejuvica; and through television appearances by paid spokespersons disguised as news content.  The core message of the advertising was that Sobrenix eliminated cravings for alcohol and enabled users to reduce or eliminate their consumption of alcohol, thereby controlling unwanted drinking and treating alcohol use disorder or the symptoms of alcohol use disorder.

14.   Defendants disseminated or caused to be disseminated advertisements for Sobrenix, including, but not limited to, the attached Exhibits B through K.  Those advertising materials contained the following statements and depictions, among others:

A.   Amazon.com (Exhibit B):

   o   "STRUGGLING TO CONTROL YOUR ALCOHOL CONSUMPTION?  Sobrenix is designed to reduce alcohol cravings and help you detoxify your body so you can successfully manage alcohol consumption.  Even better, taken before drinking, Sobrenix's ingredients help you stop before you've had too much."

B.   Amazon.com (Exhibit C):

   o   "After a week and a half or so, I no longer have the 4 pm cravings and the car doesn't automatically drive to the liquor store after work anymore."

C.   Sobrenix Website (Exhibit D):

   o   "Are You Ready To Stop Cravings Once And For All?"

   o   "Imagine A Solution To STOP Cravings In Their Tracks"

   o




o "Get The Life You Deserve With Sobrenix"

o Voiceover from embedded video (Exhibit E):

> Does alcohol negatively affect your life?  Do you find yourself drinking more than you want to?  Waking up with regrets from the night before?  Has alcohol affected relationships with friends and family or hurt your job performance?....Almost 30% of Americans admit to having trouble with controlling alcohol consumption at some point in their lives….Whether it's a big problem or a small problem, there's no shame in admitting alcohol has more control on your life than you want it to.  There's a huge genetic component to alcoholism, as well, so on some level it's not your fault….Here's the good news:  there's a natural, inexpensive way to help you take back control of your alcohol use.  It's not a time-consuming 12-step program, it's not hypnosis, and it's not an expensive rehab center, either.  It's the safe, healthy, all-natural option that thousands of those in the know successfully use to help get a handle on their alcohol consumption or quit altogether without turning their lives upside down….  Formulated by top health experts and researchers, with a half-million dollar budget.... This formula has shocked thousands who now, for the first time in years, find themselves able to stop drinking when they want to.  The most common feedback from Sobrenix users is "When I take Sobrenix, I just don't feel like drinking."….

Here's how Sobrenix's three-step process works…
The third step is Sobrenix's secret weapon….Step
three:  craving killer kudzu makes moderation easy....
Imagine cutting your alcohol consumption in half and
imagine how much better you'd feel and how much
more you could accomplish!  Best of all [in the
Harvard study] kudzu cut drinking in half for a group
that wasn't even trying to moderate their drinking;
imagine how much it would help someone like you,
who is focusing on it.... So, to put it all together,
Sobrenix is the premier alcohol management formula,
with three goals in mind….most importantly, help
reduce your desire to drink.  Getting your alcohol use
under control by using Sobrenix, you can start to live
life to the fullest again….Give Sobrenix a shot today,
and break free from the ball and chain of alcohol once
and for all."

D.    AlcoholSupportSupplements.com (Exhibit F)

o    "If you're looking for a better craving support
supplement, look no further!"

o    "If you've had trouble with drinking, you're certainly not
alone.  Almost 30% of Americans admit to having
trouble with their alcohol consumption at some point in
their lives, and 14% said they had two or more symptoms
of alcohol use disorder.
The point at which alcohol becomes a serious problem is
different for each individual.  For some, they simply want
to cut back.  For others, they want to curb their alcohol

cravings. And lastly, some want to give up alcohol together."

- o   "How Do I know if I Need to Control My Drinking?"
- o   "Does alcohol negatively affect your life?"
- o   "Are There Any Natural Supplements that Help with Alcohol Control?"
- o   The website purported to review five alcohol support supplements.  Sobrenix received the highest rating of the five products reviewed, 94% out of 100%, and was described as the "clear winner."

**Sobrenix Advertising Masquerading as Objective News Content**

15.    Defendants also advertised Sobrenix through appearances on local television news stations in the United States and Canada by paid spokespersons.

16.    In April 2019, Rejuvica entered into an Agreement for Services ("AFS") with Media Relations, Inc., also d/b/a Media Relations Agency (collectively, "MRI"), to produce a publicity campaign for Sobrenix.  The AFS called for MRI to secure media placements for Sobrenix on various mediums, including television.  These media placements are often referred to as "earned media," which is publicity gained from methods other than traditionally paid advertising.

17.    MRI prepared a Campaign Communications Overview for Sobrenix.   The Overview set forth the "Top 3 Primary Value Points or Key Messaging Themes," the first of which was "Sobrenix is an herbal tincture designed to help those who want to regain control of their alcohol consumption but struggle with alcohol cravings."

18.    Defendants Armstrong and Dilger were MRI's main contacts at Rejuvica during the course of the Sobrenix publicity campaign.  Defendant Armstrong worked with MRI on product messaging, while Defendant Dilger analyzed the

impact of the MRI publicity campaign on Sobrenix sales, and authorized payment of all MRI invoices.

19.     MRI engaged Bryce Wylde ("Wylde"), a Canadian alternative health "expert," and Jonny Bowden ("Bowden"), a board-certified nutritionist, as the spokespersons for the Sobrenix campaign.  MRI secured television appearances on various networks in markets in the United States and Canada pursuant to the AFS, designed to appear to be general interest segments, but that were in reality appearances of Rejuvica's paid spokespersons promoting Sobrenix.

20.     MRI billed Rejuvica for Wylde's and Bowden's travel and hotel accommodations, as well as "honoraria" for their appearances.  MRI also billed Rejuvica for each television "placement" it secured for Wylde and Bowden, which served as MRI's compensation for securing the placement.  Defendant Dilger approved and paid each MRI invoice.

21.     Wylde appeared on at least seven television news programs.  At no time during any of his television appearances did Wylde state that he was being paid to promote Sobrenix.  During these segments, in which a bottle of Sobrenix was clearly shown on camera, Wylde touted the ability of Sobrenix to reduce alcohol consumption.  In some of those appearances, he also stated that Sobrenix reduced cravings for alcohol; in others, he said Sobrenix had been proven to reduce alcohol consumption.  Illustrative efficacy claims made in various TV markets include:

          A.    San Antonio (Exhibit G):

               "Studies show – a Harvard study actually showed – that when these college students were allowed to drink as much beer as they wanted but half of them took this kudzu, this Sobrenix, before drinking, the other half took a placebo.  It turned out that the group that took the kudzu plant extract Sobrenix, before drinking, drank half.  They drank 50% as much when allowed to drink as much as they wanted.  So effortless.  [describes

putting a couple of drops of Sobrenix in water and drinking it all day, and advising his patients to do the same]  You'll notice your cravings for alcohol just go right down."

B.   Toronto (Exhibit H):

"Sobrenix. . .did a double-blinded, placebo-controlled Harvard trial, so this is legit stuff, two pools, students, college students. . .One group got water, the other group got this stuff [pointing to Sobrenix bottle.]  The group that was active, that got this kudzu ingredient, they drank half as much at free will, half as much. . .it cuts cravings."

C.   Houston (Exhibit I):

"[Taking Sobrenix a half hour before drinking] is going to reduce your cravings for alcohol and have you drinking less …"

D.   Denver (Exhibit J):

"Harvard study – they double-blind, placebo controlled, two groups, college students – they said 'go and drink as much as you want'…one was given Sobrenix.  They didn't drink nearly as much alcohol…wonderful stuff."

22.    Rejuvica's Director of Marketing emailed that Wylde's Toronto appearance was "basically a Sobrenix commercial."  Defendant Armstrong directed employees to post the video on the Sobrenix landing page, which they did, without disclosing that Wylde was a paid spokesperson for the company.

23.    Rejuvica also embedded an excerpt of several of Wylde's video appearances on Amazon.com without disclosing that Wylde was a paid spokesperson for the company.

24.    MRI advised Defendants to promote a Wylde TV appearance by treating it as if it were a surprise.  In an email from MRI to Defendants, MRI said, "now we want to make sure that when we amplify [a Wylde TV appearance promoting

-10-

Sobrenix] we keep it true to being earned media[,] not advertising.  We will accomplish by treating like it was a pleasant surprise to be included in a segment on the power of plants and cravings[.]"  Defendants implemented the suggested strategy by posting a video of one of Wylde's television appearances on the company's Facebook page, along with the statement:

> "I wanted to share a recent (dated November 2020) local news segment from WOAI San Antonio featuring Bryce Wylde talking about dopamine levels, cravings, Kudzu, and sobrenix (sic) itself!
> Give it a watch!"

Defendants did not disclose anywhere in the post that Wylde was a paid company spokesperson.

25.     Pursuant to Rejuvica's agreement with MRI, Bowden appeared on at least two television programs promoting Sobrenix.  At no time during any of his television appearances did Bowden state that he was being paid to promote Sobrenix.  During at least one of these segments, in which a bottle of Sobrenix was clearly shown on camera, Bowden touted the ability of Sobrenix to reduce the desire to drink alcohol.  Bowden also referred to Sobrenix being tested in the Harvard study.  (Exhibit K)

26.     Rejuvica embedded excerpts of video appearances by Wylde and Bowden on the Sobrenix website without disclosing that Wylde and Bowden were paid spokespersons for the company.  For example, Rejuvica stated:

> "**Sobrenix was recently featured on KATU & CITY TV**
> Our product was recognized by **health experts** Jonny Bowden & Bryce Wylde as a product to <u>help reduce and control cravings</u>.  We are so excited to share this video with you!"  (Exhibit D).

**Fake Review Websites For Sobrenix and Other Products**

27.     In 2016, Defendants Armstrong and Dilger jointly decided to create and launch dozens of websites that falsely purported to provide objective reviews of health-related products, including Sobrenix and other health-related tinctures. Defendant Armstrong drafted the content of these websites (hereafter "product comparison websites"), and none of the products was reviewed by anyone with expertise in the relevant medical field or anyone unconnected with Rejuvica.  The websites included "AlcoholSupportSupplements.com," "LiverSupportReviews.com," "MaleVitalityReport.com," "ThyroidRemedy.com," and "NerveRemedyReviews.com," among others.  (Examples of such websites are attached as Exhibits F and L-O.)  These fake review websites shared a number of common features including the following:

      A.     A badge at the top of the website stating that the content was an "expert review," despite the fact that no expert reviewed any of the content Rejuvica posted to any of the product comparison websites;

      B.     A statement that the review had been posted by "**Paul Grudnitsky**" (a fictional pen name used by a member of Rejuvica's marketing staff), or had been "Written by the Editors," or "By Editors at [the name of the website]" or "Posted by the **Senior Editor** at [the name of the website]" (emphasis in original), rather than a truthful statement that Rejuvica owned the website and wrote its content;

      C.     Ratings for five products purportedly reviewed on each site, which included identical descending percentages or star ratings for the reviewed products, and always listed the Rejuvica product as obtaining the highest score:  a 94% score (or 5/5 stars) for the first place product; 82% (or 4/5 stars) for the

second place product; 63% (or 3/5 stars) for the third place product; 41% (or 2/5 stars) for the fourth place product; and 31% (or 1/5 stars) for the fifth place product;

D.     Nearly identical criteria against which the products in question were purportedly evaluated (including liquid formulation, 24-hour customer support, and a 100% return policy), all of which the Rejuvica product always met;

E.     First place and the "Gold Award" always going to the Rejuvica product.

**Defendants Marketed Sobrenix as a Substance Use Disorder Product**

28.     The Diagnostic and Statistical Manual of Mental Disorders (Fifth Edition) ("DSM-5™"), identifies alcohol-related disorders as substance-related disorders.  According to the DSM-5™, "alcohol use disorder" is "a problematic pattern of alcohol use leading to clinically significant impairment or distress, as manifested by at least two of [eleven identified criteria], occurring within a 12-month period."  Those criteria include:  drinking more or over a longer period than intended; a persistent desire or unsuccessful efforts to cut down or control alcohol use; and craving or a strong desire to use alcohol.

29.     Throughout the course of the Sobrenix marketing campaign discussed *supra*, with repeated references to cravings, reduced consumption (or quitting altogether), and regaining control over one's life, Defendants consistently marketed Sobrenix as an alcohol use disorder treatment product.  For example, on the Sobrenix website, Defendants asked,

"Does alcohol negatively affect your life?  Do you find yourself drinking more than you want to?  Waking up with regrets from the night before?  Has alcohol affected relationships with friends and family or hurt your job performance?...Whether it's a big problem or a small problem, there's no shame in admitting alcohol has more

control on your life than you want it to. There's a huge genetic component to alcoholism, as well, so on some level it's not your fault…" (Exhibit E)

30.    Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission because, among other things:  Defendants stopped advertising and selling Sobrenix only after they learned that the FTC was investigating the claims being made for the product; and Defendants' deceptive product comparison website practices continued for their other products. Those practices continued for approximately eight months after Defendants learned of the FTC's initial investigation; those review practices only ceased after the FTC notified them in December 2021 that it was broadening its investigation to include those practices.

## VIOLATIONS OF THE FTC ACT

31.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

32.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

33.    Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics.  For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, Sobrenix is a "drug" as defined in Section 15(c) of the FTC Act, 15 U.S.C. § 55(c).

## COUNT ONE—DECEPTIVE ALCOHOL CRAVINGS
## AND CONSUMPTION CLAIMS

34.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Sobrenix, including through the means

described in Paragraphs 10-29 of this Complaint, Defendants have represented, directly or indirectly, expressly or by implication, that Sobrenix:

      A.     Reduces or eliminates cravings for alcohol;

      B.     Enables users to substantially reduce or eliminate their consumption of alcohol;

      C.     Assists users to regain control of their problematic drinking; and

      D.     Treats alcohol use disorder or the symptoms of alcohol use disorder.

35.    The representations set forth in Paragraph 34 were false or misleading or were not substantiated at the time the representations were made.

36.    Therefore, the making of the representations as set forth in Paragraph 34 constitutes a deceptive act or practice in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT TWO – FALSE PROOF CLAIMS

37.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Sobrenix, including through the means described in Paragraphs 10-29, Defendants represented, directly or indirectly, expressly or by implication, that Sobrenix was proven to reduce alcohol cravings and consumption.

38.    In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 37, Sobrenix was not proven to reduce alcohol cravings and consumption.

39.    Therefore, the making of the representations set forth in Paragraph 37 constitutes a deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT THREE –DECEPTIVELY FORMATTED ADVERTISING

40.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Sobrenix, including through the means described in Paragraphs 10-29, Defendants represented, directly or indirectly, expressly or by implication, that the statements about Sobrenix made by Bryce Wylde and Jonny Bowden during their television appearances were independent opinions by impartial experts.

41.     In truth and in fact, the statements about Sobrenix made by Bryce Wylde and Jonny Bowden during their television appearances were not independent opinions by impartial experts; they were paid commercial advertising.

42.     Therefore, the making of the representations set forth in Paragraph 40 constitutes a deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT FOUR – DECEPTIVE ENDORSEMENTS

43.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Rejuvica products, including through the means described in Paragraphs 10-29, Defendants represented, directly or indirectly, expressly or by implication, that:

> A.     The reviewing entities, including but not limited to "AlcoholSupportSupplements.com," "LiverSupportReviews.com," "MaleVitalityReport.com," "ThyroidRemedy.com," and "NerveRemedyReviews.com," were independent organizations providing objective information about the products they reviewed; and
>
> B.     The product reviews on those websites reflected the opinion of experts in the medical fields at issue.

44.     In truth and in fact, the reviewing entities were not independent organizations providing objective information and the product reviews on their

websites did not reflect the opinion of experts in the medical fields at issue. Instead, it was disguised advertising for Rejuvica products.

45.    Therefore, the making of the representations set forth in Paragraph 43 constitutes a deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## VIOLATIONS OF THE OPIOID ADDICTION RECOVERY FRAUD PREVENTION ACT OF 2018

46.    The Opioid Addiction Recovery Fraud Prevention Act of 2018 ("OARFPA"), P.L. 115-271, 15 U.S.C § 45d, was enacted on October 24, 2018. OARFPA prohibits unfair or deceptive acts or practices with respect to any substance use disorder treatment service or substance use disorder treatment product.  15 U.S.C. § 45d(a).  OARFPA defines "substance use disorder treatment product" to mean "a product for use or marketed for use in treatment, cure, or prevention of a substance use disorder, including an opioid use disorder."  P.L. 115-271 § 802, 15 U.S.C § 45d.

47.    As described in paragraphs 10-29 above, Defendants have marketed Sobrenix as a substance use disorder treatment product.

48.    Pursuant to 15 U.S.C. § 45d(b)(1), a violation of 15 U.S.C. § 45d(a) is treated as a violation of a rule under Section 18(a) of the FTC Act, 15 U.S.C. § 57a(a), regarding unfair or deceptive acts or practices.

49.    Section 19(b) of the FTC Act, 15 U.S.C. § 57b(b), and Section 8023(b) of the OARFPA, 15 U.S.C. § 45d(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of OARFPA.

50.    Defendants made deceptive substance use disorder treatment claims for Sobrenix from 2017 until approximately March 8, 2021.

## COUNT FIVE – DECEPTIVE ALCOHOL CRAVINGS AND CONSUMPTION CLAIMS (OARFPA)

51.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Sobrenix, including through the means described in Paragraphs 10-29 of this Complaint, Defendants have represented, directly or indirectly, expressly or by implication, that Sobrenix:

        A.    Reduces or eliminates cravings for alcohol;

        B.    Enables users to substantially reduce or even eliminate their consumption of alcohol;

        C.    Assists users to regain control of their problematic drinking; and

        D.    Treats alcohol use disorder or the symptoms of alcohol use disorder.

52.     The representations set forth in Paragraph 51 were false or misleading or were not substantiated at the time the representations were made.

53.     Therefore, the making of the representations as set forth in Paragraph 51 constitutes a deceptive act or practice with respect to a substance use disorder treatment product in violation of Section 8023(a) of OARFPA, 15 U.S.C. § 45d(a).

## COUNT SIX – FALSE PROOF CLAIMS (OARFPA)

54.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Sobrenix, including through the means described in Paragraphs 10-29, Defendants represented, directly or indirectly, expressly or by implication, that Sobrenix was proven to reduce alcohol cravings and consumption.

55.     In truth and in fact, Sobrenix was not proven to reduce alcohol cravings and consumption.

56.    Therefore, the making of the representations set forth in Paragraph 54 constitutes a deceptive act or practice with respect to a substance use disorder treatment product in violation of Section 8023(a) of OARFPA, 15 U.S.C. § 45d(a).

## COUNT SEVEN – DECEPTIVE ENDORSEMENTS (OARFPA)

57.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Sobrenix, including through the means described in Paragraphs 10-29, Defendants represented, directly or indirectly, expressly or by implication, that:

      A.    The reviewing entity AlcoholSupportSupplements.com was an independent organization providing objective information about the products it reviewed; and

      B.    The product reviews on that website reflected the opinion of experts in the field of alcohol use disorder.

58.    In truth and in fact, AlcoholSupportSupplements.com was not an independent organization providing objective information and the product reviews on that website did not reflect the opinion of experts in the field of alcohol use disorder.  Instead, it was disguised advertising for Sobrenix.

59.    Therefore, the making of the representations set forth in Paragraph 57 constitutes a deceptive act or practice with respect to a substance use disorder treatment product in violation of Section 8023(a) of OARFPA, 15 U.S.C. § 45d(a).

## COUNT EIGHT –DECEPTIVELY FORMATTED ADVERTISING (OARFPA)

60.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Sobrenix, including through the means described in Paragraphs 10-29, Defendants represented, directly or indirectly, expressly or by implication, that the statements about Sobrenix made by Bryce Wylde and Jonny Bowden during their television appearances were independent opinions by impartial experts.

61.   In truth and in fact, the statements about Sobrenix made by Bryce Wylde and Jonny Bowden during their television appearances were not independent opinions by impartial experts; they were paid commercial advertising.

62.   Therefore, the making of the representations set forth in Paragraph 60 constitutes a deceptive act or practice with respect to a substance use disorder treatment product in violation of Section 8023(a) of OARFPA, 15 U.S.C. § 45d(a).

## CONSUMER INJURY

63.   Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and OARFPA.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that the Court:

A.   Enter a permanent injunction to prevent future violations of the FTC Act and the OARFPA by Defendants;

B.   Award monetary and other relief within the Court's power to grant; and

C.   Award any additional relief as the Court determines to be just and proper.

Respectfully submitted,

Dated: July 18, 2023

FOR THE FEDERAL TRADE COMMISSION
COURTNEY A. ESTEP
cestep@ftc.gov; (202) 326-2788
SHIRA D. MODELL
smodell@ftc.gov; (202) 326-3116
Federal Trade Commission

600 Pennsylvania Ave., NW
Washington, DC 20580
Fax: (202) 326-3259

AARON SCHUE (Local Counsel) (Bar No. 338760)
aschue@ftc.gov; (310) 824-4306
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Fax: (310) 824-4380

ATTORNEYS FOR PLAINTIFF